### GREAT WESTERN MFG. CO. v. LOWE.

(District Court, E. D. Michigan, S. D. July 26, 1926.)

No. 838.

1. **Patents** ⊜⟞165.

A patentee is bound by his claims as written, and court cannot read limitations into them to save them from anticipation.

2. **Words and Phrases.**

"Gyration" means movement about a fixed point.

3. **Patents** ⊜⟞328.

Combs' patent, No. 1,152,396, for a gyratory sifter, claims 10, 11, 18, and 21, *held* void for lack of invention and claims 6, 7, 19, and 20 void for anticipation.

In Equity. Suit by the Great Western Manufacturing Company against Robert C. Lowe, doing business as the Lowe Manufacturing Company. Decree for defendant.

Bruce Elliott, of St. Louis, Mo., for plaintiff.

Edward N. Pagelsen, of Detroit, Mich., for defendant.

TUTTLE, District Judge. This suit involves the questions of validity and infringement of claims 6, 7, 10, 11, 18, 19, 20, and 21 of United States patent No. 1,152,396, granted September 7, 1915, to C. W. Combs. These claims are as follows:

"6. In combination, a vertical frame suspended from a single point for lateral movement in any direction, means for gyrating said frame, and a container supported by said frame to gyrate therewith.

"7. In combination, a vertical frame, one element supporting said frame, so that the same may move laterally in any direction, means for gyrating said frame, and a container supported by said frame to gyrate therewith."

"10. In combination, a frame supported for gyration, a container, a friction clamp carried by the frame and adapted to firmly embrace said container, and brackets on said friction clamp to support the container when released from the friction clamp.

"11. In combination, a frame supported for gyration from a single point, a container, and a flexible clamp on the frame to removably secure said container thereto."

"18. In combination, a container, means embracing said container to removably hold the same, a support for said embracing means capable of lateral movement, and means for actuating said support.

"19. In combination, a container free to move laterally in any direction, a single support for said container capable of securing the latter from axial rotation, and a motor for actuating said support.

"20. In combination, a structure, single supporting means for said structure, actuating means for said supporting means, a driver for said actuating means, and power transmission devices operably connecting said driver and the actuating means.

"21. A container free to move laterally in any direction, adjustable means to hold said container, a support for said adjustable means, and means for actuating said support."

While the questions of both validity and infringement are involved, the question of validity presents the only problem because the claims, or at least most of them, if fairly construed and their terms given their natural interpretation, read on the machine of the defendant. The serious question of this case is the validity of the claims in suit.

[1] The structures of the patent in suit, of the defendant, and of the prior art are all easy to understand. The Combs structure, shown in his patent, embodies a frame suspended from a single point, a hook in his Fig. 1, and a universal joint *24* in Fig. 5. The frame of Fig. 1 is caused to gyrate about the point of suspension by means of an electric motor mounted within the frame and carried thereby, and the frame of Fig. 5 is caused to

gyrate about the point of suspension by means of driving mechanism mounted outside or independent of the frame. As the claims in suit are not limited to a structure with the motor mounted in and carried by the frame, we must assume that the inventor intended these claims to be sufficiently broad to cover a gyratory structure which is actuated by a driving mechanism mounted either in the gyratory structure or adjacent thereto and independent thereof. It does not matter whether these claims were written as broadly as they are, because the inventor was not informed as to the prior art, or, knowing it, carelessly disregarded it. He is bound by his claims as written, and the court cannot read limitations into these claims for the purpose of limiting them and saving them from anticipation.

The references relied upon by the defendant are the following United States patents:

Maxwell, No. 9,218, of August 24, 1852;
Wathew, No. 59,325, of October 30, 1866;
Mitchell, No. 246,183, of August 23, 1881;
Sterns, No. 285,174, of September 18, 1883;
Schnelle, No. 507,756, of October 31, 1893;
Barber, No. 807,709, of December 19, 1905;
Bowsman, No. 843,067, of February 5, 1907;
Lindsay, No. 951,478 of March 8, 1910;
Watters, No. 1,002,476, of September 5, 1911;

and British patent to Fairweather, No. 5995 of 1885.

The machine made by defendant is illustrated by his patent No. 1,392,345, dated October 4, 1921. A sieve or riddle 17 is supported by a yoke 25 (Fig. 5), which attaches to a shaft 8 connected to a ball 13 mounted in a socket formed in the cross-bar 12 and cap 15. The upper end of the shaft 8 is carried around in a circle by means of an eccentric socket in a flywheel 5 on the shaft of the motor 4, which is mounted between the side bars 1 which connect the cross-bar 12 to the bale or hanger 3. This circular movement of the upper end of the shaft 8 causes a gyratory movement of the sifter or sieve 17 about the center of the ball 13, which is the single point of suspension or support. The witnesses agree that the yoke 25 (or 19) is the "frame" or "support" specified by the claims, while there is a difference of opinion as to whether that portion of the shaft 8 above the yoke 25 in Fig. 5 is a part of this frame or is part of the driving mechanism. As it is rigid with

13 F.(2d)—56

the yoke, it should be considered part of the "vertical frame" specified by the claims in suit.

The patents of the prior art, excepting Barber, Bowsman, and Lindsay, each disclose a vertical support or frame supporting a container, the frame being suspended or supported from a single point, and means to gyrate the support or frame. Thus Maxwell has a vertical frame c supporting a container B, the frame being suspended from the single point e and driven by the handle f and crank d.

Wathew has a shaft B mounted intermediate its ends on a universal joint D and supporting a container A. The shaft and container are gyrated by the gear F.

Mitchell has substantially the same construction as Wathew.

Stern shows a vertical frame e suspended from the single point g and supporting the container d. Power is applied by a yoke h, which carries the point m around in a circle, and thus gyrates the frame and container.

Schnelle shows a vertical frame holding the sieves b, and is suspended from the universal joint r. The frame is gyrated by the crank shown in Fig. 3.

Watters shows a frame 25 which contains a sieve 27 and is suspended by rods 26. The frame is gyrated by the crank socket 19.

Fairweather shows a vertical frame A suspended at B in Figs. 1, 3 and 4, and supported at B in Fig. 5. The sieves a are mounted in these frames, which are gyrated about the points B by the driving mechanisms C.

In each of these cases, the driving mechanism is supported independently of the gyrating frame or support; but this is also true of the mechanism of Fig. 5 of the patent in suit and of the structure of defendant.

[2] We have, then, in these prior patents, abundance of structures which embody the details set forth in claims 6, 7, 20, and 21 of the patent in suit, and for the several details of the other four claims, excepting the peculiar clamping devices therein set forth, which will be taken up later on. While Combs made a step forward in the art, to be discussed later on, the claims in suit do not specify any worth-while, novel, useful thing. The gyratory movement, in my judgment, has advantage; but it was old in the art. To get this gyratory movement, it was necessary to suspend the structure which carried the container from a single point, because "gyration" means movement about a fixed point; but this was recognized and described in many of the patents of the prior art. Sifting screens were

mounted in the frames of Fairweather and Schnelle, while containers of various kinds were mounted in the structures of the other patents. As these had to be held off the floor, it was natural to suspend them in the most convenient manner to permit gyration, which seemed to be the most advantageous movement which could be imparted to a sifter screen. Power necessarily had to be applied to cause this gyration.

[3] So, without considering the claims in suit, we look at the prior art to see what novel structure Combs actually produced. We find the gyrating frame and container, the single point of suspension, and the motive power, generally applied to the frame at the end opposite the point of support, although Wathew and Mitchell show points of support intermediate the container and the point of application of the motive power. In each case (excepting Bowsman, who has a number of points of support) we find mechanism mounted outside of the frame, usually a crank, and reaching up to the bottom of the frame to cause that end of the central axis of the frame to be tilted from its natural position, and, the power being so applied, the frame is caused to gyrate; the movement being in a fixed course, defined by this mechanism.

In order to use a sifting screen or riddle, or a container of any kind, it is necessary to hold it, and this holding device is properly called a frame or support. So novelty in a container and its support cannot be expected, and, so long as a gyrating frame or support was old, novelty in means to drive it could not be expected. The weight of the structure had to be suspended in some manner to hold it off the earth or floor, and to do so was old and natural. The suspension from a single point about which the frame gyrated was old. Gyration of the frame could not be had without gyration of the container. These were impossible, without power being applied to cause these movements about the fixed point, which did not gyrate.

The advantage of gyratory movement was learned early in the sifter and other arts. The application of power to the frame from outside of the frame, at the end opposite the point of suspension, was usually adopted, and this was commonly an off-center shaft, or crank, connecting to the bottom of the frame and causing the central axis of the frame to be tipped aside from the position in which it would hang by gravity. This driving mechanism caused the frame to revolve, not on its axis, but in a gyratory manner, in a course defined by the mechanism. This lateral movement was not free, in the broadest sense of the word, although it was gyratory, being in every lateral direction in a fixed path, fixed and designated by the machine.

The prior art also shows a frame supported at its lower end, applying the term "supported" in the ordinary way, meaning that the support is below the frame and holds it up, and power applied to the upper end to cause the frame to gyrate about the single point of support at the bottom. It also shows a frame supported intermediate its ends and power applied to one end to gyrate the frame and the container mounted on the other end of the frame. It also shows suspending means in the form of universal joints, which prevent lateral rotation, so that these several devices are not new, broadly.

Disregarding the claims in suit for a moment, Combs seems to have made two steps in advance in this sifter art: First, he so designed the machine of Fig. 1 of his patent that it was literally and actually free to swing in any direction about the point of support. His frame and sifter were not forced to travel a predetermined path fixed by the mechanism of the machine, as in the machines of the prior art having single points of support. Combs avoided the necessity of an outside driving mechanism, such as a crank, which fixed the gyrations. He used a motor and a rotating unbalanced weight mounted in his frame to cause the sifter and the entire frame to gyrate. These gyrations were not fixed, and the expert witness for plaintiff stated that these gyrations would be affected by the speed and load. The Combs frame hung free and its movement was free. This was a novel device.

The idea is brought out in claims 1, 8 and 16, which, however, are properly not before the court, and the defendant does not employ this kind of gyration. He does not make use of this kind of free lateral movement in every direction, which Combs has claimed. But this is mere dictum, as these three claims are not before me.

Another novel idea is dependent on the first; that is, the mounting of the entire motive power in the frame, so that the entire machine may be transported from point to point, and so that it may be suspended at any desired height to permit free access to the sifted material. This, also, eliminates the driving mechanism below the sieves and the danger of having these devices injured by the sifted material. The difficulties of transporting a machine increase with each additional point of contact or engagement with the surrounding objects, and, having but one point of contact,

the Combs machine is easily moved. The same idea is illustrated in the catalogue of the Hanna Engineering Works of 1905, Defendant's Exhibit 5; but that is an entirely different type of sifter.

I find nothing in any of the claims in suit which specifies portability. Combs specifies the free lateral movement, which defendant's device does not have; but he is silent as to the portability. While I am convinced that a claim covering this idea could have been drawn and would have been novel, this idea is not expressed in the claims in suit, and cannot be read into them. It is possible that the inventor regarded his construction as entirely novel, and therefore, after preparing the broad claims in suit, he neglected to embody portability in any of his claims.

There is no patentable combination in building one old element, such as a clamp to hold a riddle, into a sifter frame suspended from a single point, which is another old and well-known device. The clamp is described in the patent to Barber, No. 807,709 of 1905, and operates in the same manner and is for the same purpose as the clamp shown in Figs. 1 and 2 of the patent in suit. A similar clamp is shown in Defendant's Exhibit 5, a catalogue of the Hanna Engineering Works, issued in 1905, and convincing testimony is before the court to show that this clamp was in use long before Combs entered the field. It would require no more than mechanical skill to install this clamp in the sifter frames of the patents to Schnelle or Fairweather, of record.

If the mounting of this clamp in a gyrating frame produced a new and unexpected result, or if the old gyrating frame and the old clamp so affected each other that a new result was produced, a claim thereto might be valid. But the proofs show that no such result is produced. The mere fact that this type of sieve mounting is more desirable is not sufficient, and claims 10, 11, 18, and 21 are therefore void and invalid.

I doubt if there is any advantage in taking up the several claims individually, as the above general discussion covers them.

Claim 6 covers: "In combination, a vertical frame suspended from a single point for lateral movement in any direction, means for gyrating said frame, and a container supported by said frame to gyrate therewith." This claim reads literally on the constructions of Maxwell, Sterns, Schnelle, Watters, and Fairweather, and, if the word "suspended" be given the meaning it should have, it includes, not only a device which reaches down from above to hold up, but also devices which extend up

to support. The claim, therefore, also reads on the structures of Wathew and Mitchell.

The patent to Bowsman shows a frame with four points of suspension, and hence no true gyration is present. The ordinary garden swing, with its two ropes, may be said to have a gyratory motion; but this is not correct in the strictest sense, as true gyratory movement seems to require a single point of suspension. The prior art before the court shows a number of machines which have this true gyratory motion.

Plaintiff's suggestion, that the court read into this claim certain limitations, so as to save the claim from being anticipated, cannot be accepted. The suggestion is that the claim be read as if it were written:

"In combination, a vertical frame coming in contact with an outside support at only a single point and being suspended at said single point for lateral movement in any direction, means for gyrating said frame, and a container in said frame to gyrate therewith."

This cannot be accepted. The court could just as well add the words, "the motive power being within the structure and not outside of it," for that is what Combs produced. But Combs did not make a claim of this character, and the court cannot make it for him. To carry out this suggestion to its logical conclusion, it would be necessary to write into the several claims, where the purpose of saving them would be best served, the statements that the "motor is mounted in the suspended frame above the sieve," or that "the frame is entirely free from the floor," or that "the entire machine is portable." If the court were to so rewrite the claims and then declare them valid, it would step into the field of the Patent Office, which is not within the province of this court. We must take this patent as it was prepared. Combs did not write such limitations into any of his claims, and we do not know why he did not do so. He probably considered his invention so new and novel that he was entitled to the broad claims now before this court, and did not realize that he had originated merely two narrow details.

I am convinced that neither Combs, nor the Examiner at the Patent Office, nor the attorney who prepared the claims in suit, knew of the prior art before me, and that they felt certain that broad claims, like claims 6 and 7, would preserve all the advantages to which the inventor was entitled. If the prior art were not what it is, there is no doubt but what claims 6 and 7 would have conferred a monopoly sufficiently broad to include every type of sifting machine presented to this court.

If an inventor were permitted to obtain broad claims, and thereafter write in such limitations as are necessary to avoid the prior art, but still cover an alleged infringing structure, the public would never be certain as to the meaning of a claim, and endless confusion and litigation would result.

What has been said about claim 6 applies also to claim 7, as the difference between "suspended" and "supported" is immaterial, particularly as "supported" may be considered the broader term. It also applies to claim 19, for, while this claim specifies a single support to secure the container from axial rotation, such mechanism is found in Maxwell, Mitchell, Sterns, and Schnelle, operating in the same manner and for the same purpose as in the patent in suit. It also applies equally to claim 20.

My conclusion, therefore, is that Combs added only two ideas to the prior art. The first is that of mounting the motor in the supporting frame in such a manner that the motor, frame, and sieve would gyrate as a unit. This is claimed, but the claims are not in suit, and counsel for plaintiff has pointed out that these claims are not infringed. The second is the portability of the entire machine, resulting from the motor being mounted in the frame, which is not claimed, and which is beyond the province of this court to write into the claims.

Interpreting claims 6, 7, 19, and 20 as the clear English language meaning and mechanical meaning indicates, I find that they read squarely on the prior art, and therefore I hold them void, and dismiss the bill.