## GREAT WESTERN MFG. CO. v. LOWE.

Circuit Court of Appeals, Sixth Circuit.
June 16, 1928.

No. 4977.

Patents ⬤⇒328—1,152,396, relating to Improvement in means for supporting gyratory structures, claims 6, 7, 11, 19, 20, 21, held not infringed.

Patent No. 1,152,396, issued September 7, 1915, to George W. Combs, and relating to improvement in means for supporting and controlling gyratory structures, claims 6, 7, 11, 19, 20, and 21, *held* not infringed.

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Patent infringement suit by the Great Western Manufacturing Company against Robert G. Lowe, doing business under the firm name and style of the Lowe Manufacturing Company. From a decree dismissing the bill (13 F.[2d] 880), complainant appeals. Affirmed.

Bruce S. Elliott, of St. Louis, Mo. (Stuart C. Barnes, of Detroit, Mich., on the brief), for appellant.

Edward N. Pagelsen, of Detroit, Mich., for appellee.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DONAHUE, Circuit Judge. This appeal involves the questions of validity and infringement of claims 6, 7, 11, 19, 20, and 21 of United States letters patent No. 1,152-396, issued September 7, 1915, to George W. Combs, and now owned by the Great Western Manufacturing Company.[1]

The bill of complaint charged defendant with infringing the claims above mentioned and also claims 10 and 18 of the same patent. The defenses were invalidity and noninfringement. The District Court found all of these claims invalid and dismissed the bill. 13 F.(2d) 880. From this decree an appeal was taken as to all claims in suit, except 10 and 18.

The Combs patent relates to improvement in means for supporting and controlling gyratory structures. One form of the structure of the patent, as shown in Fig. 1, consists of a vertical frame supporting at its lower end a container or sifter, and having at its upper end a hook by means of which the frame may be suspended from a single point of support, free to move laterally in any direction, a universal joint, and a shaft, having at its lower end a weighted flywheel or nonbalancing member, which, when rotated by the motor or driver, imparts a gyratory motion to the entire frame. This shaft is journaled in an anti-friction ball and socket bearing in a crossbar extending between and supported by the sides of the frame. The upper end of the shaft is yieldingly connected to the driver through a universal finger coupling. Mounted in the frame is a motor to drive this shaft, and when the machine is in operation the sides of the suspending hook engage the support and prevent the frame from axial rotation.

Another form shown in Fig. 5 has an upper frame which supports a horizontal shaft, the inner end of which carries a beveled gear and the outer end a pulley wheel driven by outside power, and a vertical stub shaft, the upper end of which carries a beveled gear that meshes with the gear on the pulley shaft, and its lower end a universal joint, which is so constructed as to prevent axial rotation. From this universal joint another shaft is suspended, that supports a second frame carrying the container. The gyratory motion of this second frame and container is pro-

---

[1] 6. In combination, a vertical frame suspended from a single point for lateral movement in any direction, means for gyrating said frame, and a container supported by said frame to gyrate therewith.

7. In combination, a vertical frame, one element supporting said frame so that the same may move laterally in any direction, means for gyrating said frame, and a container supported by said frame to gyrate therewith.

11. In combination, a frame supported for gyration from a single point, a container, and a flexible clamp on the frame to removably secure said container thereto.

19. In combination, a container free to move laterally in any direction, a single support for said container capable of securing the latter from axial rotation, and a motor for actuating such support.

20. In combination, a structure, single supporting means for said structure, actuating means for said supporting means, a driver for said actuating means, and power transmission devices operably connecting said driver and the actuating means.

21. A container free to move laterally in any direction, adjustable means to hold said container, a support for said adjustable means, and means for actuating said support.

duced by an unbalanced flywheel, as in the first form. Neither the description nor the drawings of the patent indicate clearly how the upper frame is attached to the support, but, in view of the fact that it carries the beveled gears and pulley shaft operated by outside power, it would seem necessary that it be rigidly attached to the ceiling or support, notwithstanding plaintiff's expert witness testified that it would be operable if suspended loosely by hook or chain.

The commercial structure of the Lowe patent, 1,392,345, which it is claimed infringes the claims in suit, embodies a supporting frame suspended by a stirrup, a motor, a bearing in a crossbar at the lower end of the frame, a yoke and shaft rigidly connected with each other, and supported by the bearing in the crossbar of the outer frame through the medium of a ball resting therein. Attached to the lower end of the yoke, and supported by it, is a container that travels with the yoke. The upper end of the shaft has a disk extending into an eccentric recess in the flywheel of the motor, which, when the motor is in operation, imparts a gyratory motion to the shaft and yoke about the center of the ball. The sides of the supporting frame prevent axial rotation of the yoke and shaft. The outer or supporting frame has no functional movement whatever, but it is insisted by appellant that the yoke and shaft, rigidly attached thereto, correspond to the Combs frame and infringe the claims in suit.

It is unnecessary to discuss the prior patent art in detail. It will be sufficient to call attention to a few of the patents introduced in evidence that fairly exhibit the state of the art when Combs entered the field. The patent to Schnell, 507,756, for a shaking, bolting, or shifting machine, has a single vertical supporting frame suspended from a single point; a sifter supported at the lower end of a shaft; the shaft is mounted at its upper end in a universal joint, which is so constructed as to prevent axial rotation. The gyratory motion is imparted by means of a disk connected to a stud on the bottom of the sifter and rotated by power communicated by belt and pulley from an outside motor not shown in the drawings.

Maxwell, 9,218, Sterns, 285,174, and the British patent to Fairweather, 5,995, are substantially the same, except that in the structure of these patents the gyratory movement is controlled by a crank, instead of a disk. Fairweather also shows a support from the bottom, with the crank control at the top. The disk in Schnell and the cranks in Maxwell and Sterns do not support the gyratory

structure, but are attached to stationary frames in which the gyratory structures are suspended from a single point. In the suspended form of Fairweather, the crank is attached to a base under the gyratory structure, which base also carries the means of communicating power.

Bowsman, 843,067, relates to improvement in driving mechanism for bolting machines. It consists of a sieve-carrying frame or box, suspended by flexible supports and adapted to have a free lateral movement, a vertical revoluble shaft carrying unbalanced loads, whereby, by the rotation of the shaft, the sieve frame is given a gyratory movement, and the weight arm adjustably mounted on the shaft is adapted to vary or regulate the gyration of the sieve frame, without changing the speed of the shaft. While this structure is not suspended from a single point, nevertheless the sieve-carrying frame is suspended by flexible supports, and the gyratory movement is produced by the unbalancing member attached to the shaft.

Waters, 1,002,476, relates to governors for regulating and maintaining an evenness of revolution of such devices as sieves, screens, conveyers, and the like. The drawings of the patent show a suspended structure. The two parts of the supporting means shown in the drawings converge toward each other; they are given the same number, and apparently constitute but one member by which the structure is suspended from a single point of support. The sifter rests on the top of an upright spindle, and with the revolutions of the spindle is carried about the center of the shaft. The shaft corresponds to an eccentric, which imparts a gyratory motion to the sieve.

The prior patent art also shows a number of structures mounted on a single support. These are very fairly exemplified by the patent to Mitchell, 246,183, for an ore washer and amalgamator, and the patent to Wathew, 59,325, for a confection pan.

Claim 6 of Combs reads as follows: "In combination, a vertical frame suspended from a single point for lateral movement in any direction, means for gyrating said frame and a container supported by said frame to gyrate therewith." It is conceded that this claim, "when read apart from the specifications and drawings of Combs, may be read literally upon the patents of the prior art"; but it is insisted that the phrase "for lateral movement in any direction" should be read "for gyration."

In support of this proposition it is contended that "claim 6 and other claims in

-suit be given that meaning which should be imported into the claim, in the light of the specification and drawings of the Combs patent, * * * by a process of restricting the claim to the meaning given in the specification, on the one hand, and, on the other, a meaning inherent in the conditions necessarily present in the structure defined in the claim, although such conditions are not specifically defined in the claim."

This is not a pioneer patent. Combs in his application recognizes the existence of operative gyratory structures, and limits his claimed invention to "new and novel means for supporting and controlling the same." The phrase "for lateral movement in any direction" is plain, clear, and unequivocal.

It is in complete harmony, not only with the Combs theory of control, but also with the specifications and drawings of the patent. If the Combs frame were not so suspended as to permit a lateral movement in all directions, the unbalanced flywheel employed to produce the gyratory motion would be ineffectual for that purpose. It is clear that Combs realized the importance of so suspending his frame that it would be free to move laterally in all directions, and emphasized the importance of this by repeating it in practically all of his claims. Bowsman, whose means of producing a gyratory motion consists of a vertical revolving shaft carrying an unbalanced load, also recognized the necessity of this free lateral movement, and includes it in three of the four claims of his patent. These facts clearly distinguish this case from Hauser Awning Arm Co. v. Anton (C. C. A.) 233 F. 262, and Permutit Co. v. Wadham et al. (C. C. A.) 13 F.(2d) 454.

While the principle obtains that an indefinite term, such as "means," should be restrictively interpreted as required by the state of the art, and to the end that the patent may be sustained for the really meritorious invention, and not invalidated by giving such indefinite term a construction so broad as to reach prior devices, yet in this case the structures of the prior art, except Bowsman, are either suspended or otherwise supported for gyration from one weight-carrying point and the gyratory motion controlled by a crank disk, track, or eccentric device, which do not permit any other motion. To escape anticipation, "means for gyrating," in claim 6, must be restricted to means that still leaves the supporting frame "free to move laterally in any direction," and cannot be construed to include means which restrict the frame to moving in the orbit of a circle, and prevent it from moving laterally across the axis. It

is also apparent that, if claim 6 has any validity whatever, it must be confined to a device where the means for inducing gyration are carried by the gyrating frame, or at least do not constitute an additional point of connection between the gyrating frame and the stationary or relatively stationary supporting means.

What has been said in reference to claim 6 applies equally to claims 7, 19, 20, and 21; there being no substantial difference in these claims, except that the broader terms, "support" and "supporting," are used in place of "suspended."

Claim 11 also covers a frame supported for gyration from a single point, a container, and a flexible clasp on a frame removably to secure said container thereto. While "supported" includes "suspended," yet it is quite evident that Combs intended the language, "A frame supported for gyration from a single point," as used in claim 11, to cover a frame supported from below, instead of being suspended from above; but neither the description nor the drawings of the patent show any such construction, or any means of accomplishing the same.

Mitchell, Wathew, and Fig. 5 of Fairweather show frames supported from below for gyration on a single weight-carrying point, so that not only is the language of claim 11 broad enough to cover these structures of the prior art, but, if construed in accordance with the evident intention of the inventor, it is clearly a departure from the inventive idea as explained in his description and illustrated by the drawings of his patent.

Regardless of the validity of any or all of the claims in suit, it is quite evident that the defendant's structures must be classified with the prior art and not with the patent. The frame A is substantially stationary. Functionally it is a part of the building. While it is loosely suspended, yet, if it were rigidly attached to a stationary support, its operation would be just the same. It does not gyrate, and is not intended to gyrate. The gyrating frame is the yoke and the shaft rigidly attached thereto. This gyrating frame is supported by the bearing in the crossbar of frame A. Like the structures of the prior art it also has another connection with that frame or support. The disk at the upper end of the shaft of the gyrating frame is inserted in the eccentric recess of the flywheel carried by this outer supporting frame A. In this respect it wholly differs from the Combs structure, in that the gyratory frame of Combs has but one contact with the sup-

porting means. Mechanically this disk and eccentric recess, by which the gyratory motion is produced, does not differ materially from the crank of the prior art.

Having reached this conclusion the question of validity is unimportant. Whether valid or invalid, the defendant's structure does not infringe.

Affirmed.